UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASTRAL IP ENTERPRISE LTD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CARE20 FERTILITY CALENDAR CYCLE TRACKER,<br><br>　　　　Defendant. | Case No. 23-cv-03835-EMC<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ELECTRONIC SERVICE OF PROCESS**<br><br>Docket No. 12 |

　　　　Plaintiff Astral IP Enterprise Ltd. has filed suit against Defendant Care20 Fertility Calendar Cycle Tracker, asserting claims for, *inter alia*, trademark and copyright infringement. According to Astral, Care20 offers a period tracking application named "Cycle Tracker Period Calendar" on GooglePlay, and Care20's mobile application uses a flower icon that is identical or confusingly similar with Astral's registered trademark. Now pending before the Court is Astral's motion for leave to serve the summons and complaint on Care20 by email. The motion is **GRANTED** in part.

　　　　In support of its motion, Astral states that it filed a takedown notice under the Digital Millennium Copyright Act ("DMCA") when it discovered Care20's use of the icon. In response, Care20 filed submitted a DMCA counter-notice. *See* Silver Decl. ¶¶ 4, 6. In the counter-notice, Care20 did not identify what kind or entity it is or "under what jurisdiction [it] was established"; however, it did provide a physical address located in Pakistan and an email address of care20.pk@gmail.com. Silver Decl. ¶ 6. Astral also located what appears to be additional emails for Care20: info@care20.com and contact@care20.com. *See* Silver Decl. ¶ 9. These email

addresses are listed as support emails for other mobile applications that appear to be affiliated with Care20. *See* Silver Decl., Ex. 3 (GooglePlay information).

Astral indicates that it does not want to provide service at the physical address in Pakistan because, based on its counsel's experience, "foreign online mobile application developers that provide infringing products typically . . . provide false, misleading and/or incomplete names and physical address information to conceal their locations and avoid liability for their unlawful conduct." Silver Decl. ¶ 10. It appears that, when Astral did Internet research on the physical address, it found that the physical address was associated with "multiple different businesses," none of which was Care20. Silver Decl. ¶ 7 & Ex. 1. Also, when Astral did Internet research on the name of Care20's owner (presumably, this information was also provided with the DCMA counter-notice), Astral did not find any of "the businesses associated with the [physical] address." Silver Decl. & Ex. 2.

Astral correctly points out that, under *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002), it is not first required to attempt service via, *e.g.*, means authorized by the Hague Convention (Pakistan is a signatory) before it can ask permission to serve via email. *See id.* at 1014-15 (noting that Rule 4(f)(3) allows for service by means "not prohibited by international agreement as may be directed by the court" and that "Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections"). Astral also correctly notes that the Hague Convention does not specifically preclude service of process by email. *See, e.g.*, *Bialik v. Bus. Entities*, No. 22-cv-61142-BLOOM/Valle, 2022 U.S. Dist. LEXIS 171200, at *3-4 (S.D. Fla. Sept. 15, 2022) (noting that "the United States, India, and Pakistan are signatories to the Hague Convention" and that "the Hague Convention does not specifically preclude service of process via e-mail, including private messaging applications and services, or by posting on a designated website[;] [w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such e-mail or website posting").

That being said, the Ninth Circuit has also explained that, "[e]ven if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due

process. *Rio*, 284 F.3d at 1016. In *Rio*, the court ultimately concluded that "service of process by email was proper – that is, reasonably calculated to apprise [the defendant] of the pendency of the action and afford it an opportunity to respond" – as it was, in fact, "the method of service most likely to reach [the defendant]." *Id.* at 1017. The Ninth Circuit emphasized:

> RII [the defendant] . . . has embraced the modern e-business model and profited immensely from it. In fact, RII structured its business such that it could be contacted only via its email address. RII listed no easily discoverable street address in the United States or in Costa Rica. Rather, on its website and print media, RII designated its email address as its preferred contact information.

*Id.* at 1017-18.

At the same time, the Ninth Circuit acknowledged the limitations of service by email.

> In most instances, there is no way to confirm receipt of an email message. Limited use of electronic signatures could present problems in complying with the verification requirements of Rule 4(a) and Rule 11, and system compatibility problems may lead to controversies over whether an exhibit or attachment was actually received. Imprecise imaging technology may even make appending exhibits and attachments impossible in some circumstances.

*Id.* at 1018.

In light of *Rio*, the Court is not averse to email service. Furthermore, given that Care20 provided an email address in support of its DMCA counter-notice, email service does appear reasonably calculated to apprise Care20 of the pendency of this action. Nevertheless, Astral has not made a sufficient showing that the physical address provided by Care20 in the counter-notice is not valid. A brief Internet search conducted by counsel provides some, but not much, support. Accordingly, the Court shall require Astral to provide not only email service (at the three addresses identified by Astral) but also service by mail at the physical address in Pakistan. *See* U.S. Department of State, Judicial Assistance Country Information, Pakistan, *available at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Pakistan.html (last visited 8/25/2023) (noting that, "[i]n its Declarations and Reservations on the Hague Service Convention, Pakistan does not object to service directly via postal channels"); Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Article 10(a), *available at*

https://www.hcch.net/en/instruments/conventions/full-text/?cid=17  (last visited 8/25/2023) (stating that, "[p]rovided the State of destination does not object, the present Convention shall not interfere with – (a) the freedom to send judicial documents, by postal channels, directly to persons abroad").

This order disposes of Docket No. 12.

**IT IS SO ORDERED**.

Dated: August 27, 2023

_____
EDWARD M. CHEN
United States District Judge