UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASTRAL IP ENTERPRISE LTD., <br><br> Plaintiff, <br><br> v. <br><br> CARE20 FERTILITY CALENDAR CYCLE TRACKER, <br><br> Defendant. | Case No. 23-cv-03835-EMC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> Docket No. 22 |

Plaintiff Astral IP Enterprise Ltd. has filed suit against Defendant Care20 Fertility Calendar Cycle Tracker. Astral has asserted claims for federal trademark infringement, federal and state law unfair competition, and federal copyright infringement. Currently pending before the Court is Astral's motion for default judgment. A hearing was held on the motion on February 15, 2024. Although Care20 was given notice of the hearing (through email at least), it did not make an appearance. Having considered the papers submitted (including the supplemental briefing ordered by the Court) and the oral argument of Astral, the Court hereby **GRANTS** the motion for default judgment.

## I. FACTUAL & PROCEDURAL BACKGROUND

The following summary is based on Astral's complaint and supplemental brief submitted in support of its motion for default judgment.

Astral is a company with a principal place of business in Canada. *See* FAC ¶ 1. Care20 is a company with a principal place of business in Pakistan. *See* FAC ¶ 2. Both Astral and Care20 have mobile applications available on Google Play. *See* FAC ¶¶ 6, 11.

One of Astral's applications is titled "Ovulation and Period Tracker" and is offered on Google Play with the following icon:



*See* FAC ¶ 11; Supp. Br. at 10.  Astral's mobile application was released in September 2017.  *See* FAC ¶ 17.  However, it is not entirely clear when the icon was first used.

- Astral has a U.S. trademark for the icon (not in color).[1]  *See* FAC ¶¶ 12-13 (noting that trademark application was filed in 2021 and trademark registration issued in 2022).
- Astral also has a copyright for the icon (both in color and in black and white) under Canadian law.  *See* Supp. Br. at 9-10 (showing images and addressing copyright under Canadian law); *see also* Supp. Br. at 9 (stating that "the copyright at issue was first created and published in Canada in 2020").

In December 2022, Care20 released its own period-tracking mobile application, named "Cyle Tracker Period Calendar," on Google Play.  *See* FAC ¶ 17.  In July 2023, Care20 released a second period-tracking application," again with the name "Cycle Tracker Period Calendar."  FAC

---

[1] According to Astral, it "has filed for a special form mark with no claim to color."  Supp. Br. at 11; *see also* 37 C.F.R. § 2.52 (providing that "[a] drawing depicts the mark sought to be registered"; that there are two types of drawings: standard character and special form; that a standard character drawing may not be used if "[t]he mark does not include a design element"; and that a special form drawing "should show the mark in black on a white background, unless the mark includes color").

¶ 18.

It appears that for the first application, Care20 used the following icon:



*See* FAC ¶¶ 19, 27; Supp. Br. at 10.

For the second application, Care20 used the following icon:

*See* FAC ¶¶ 19, 30; *see also* Supp. Br. at 10.

In June 2022 (*i.e.*, after Care20's release of its first application but before its release of its second application), Astral sent a "DMCA Takedown Notice through Google Play's internal system."[2]  FAC ¶ 27.  In response, Google removed Care20's first mobile application.  *See* FAC ¶

---

[2] The DMCA provides in relevant part as follows:

> A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief,

3

28.

At about the same time, Care20 "submitted a DMCA Counter-Notice to Google," which was later provided to Astral in July 2023.³ *See* FAC ¶ 29. Astral has provided evidence that

---

        for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider –

    (A)
        (i)    does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
        (ii)   in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
        (iii)  upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

    (B)    does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

    (C)    upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 517(c). The DMCA takedown notices apply to claims of copyright infringement, not trademark infringement. *See Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-FJW(JEMx), 2023 U.S. Dist. LEXIS 71336, *52 (C.D. Cal. Apr. 21, 2023) ("The three trademark takedown notices lack one of the 'most critical elements of the proper notice requirements under § 512(c)(3)(A)' – they do not identify any 'copyrighted work[s] claimed to have been infringed.'").

³ The DMCA provides in relevant part as follows:

    (1)    No liability for taking down generally. Subject to paragraph (2), a service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing or based on facts or circumstances from which infringing activity is apparent, regardless of whether the material or activity is ultimately determined to be infringing.

    (2)    Exception. Paragraph (1) shall not apply with respect to material residing at the direction of a subscriber of the service provider on a system or network controlled or operated by or for the service provider that is removed, or to which access is disabled by the service provider, pursuant to a notice provided under subsection (c)(1)(C), unless the

4

1    Care20 stated the following in its counternotice to Google:

2    [Astral] made a false claim on our app that we are using their icon to mislead users, but we are always try[ing] to make our own content to keep Google Play clean and quality based.  We have the registered rights of that icon for our app Cycle Tracker Period Calendar as we have the copyright since 2016 against the icon registered in IP (intellectual property) from the Government of Pakistan.  I'm attaching the online link from Government of Pakistan. . . . Moreover, I can also submit to you the document of copyright from the Government of Pakistan.  Given this information, we request you to reinstate our app.

. . . .

I consent to the jurisdiction of Federal District Court for the judicial district in which I reside (or the Northern District of California if my address is outside of the United States), and I will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person."

Docket No. 28 (Silver Decl., Ex. 1) (email from Google to Astral, providing information about counternotice from Care20).  (Astral disputes the claim that Care20 had a copyright since 2016. *See* Supp. Br. at 4; Docket No. 28 (Silver Decl., Ex. 2) (Pakistan Copyright Office document) (indicating that a copyright application for the icon used in the first mobile application was filed

---

service provider—

(A)   takes reasonable steps promptly to notify the subscriber that it has removed or disabled access to the material;
(B)   upon receipt of a counter notification described in paragraph (3), promptly provides the person who provided the notification under subsection (c)(1)(C) with a copy of the counter notification, and informs that person that it will replace the removed material or cease disabling access to it in 10 business days; and
(C)   replaces the removed material and ceases disabling access to it not less than 10, nor more than 14, business days following receipt of the counter notice, unless its designated agent first receives notice from the person who submitted the notification under subsection (c)(1)(C) that such person has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity relating to the material on the service provider's system or network.

17 U.S.C. § 512(g).

5

1 on 6/26/2023).)

2 The same day that Care20 gave Astral notice of its DMCA Counter-Notice, it released its second period-tracking application on Google Play (which as noted above used a different icon). *See* FAC ¶ 30.

Based on, *inter alia*, the above allegations, Astral has asserted the following claims for relief: (1) trademark infringement in violation of the Lanham Act, *see* 15 U.S.C. § 1114(1); (2) unfair competition in violation of the Lanham Act, *see id.* § 1125; (3) unfair competition in violation of California Business & Professions Code § 17200; and (4) copyright infringement in violation of the Copyright Act. *See* 17 U.S.C. § 501.

## II.   DISCUSSION

A.   Service of Process

"As a preliminary matter, the Court must first assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trs. v. James Island Plastering, Inc.*, No. 19-cv-02921-EMC, 2020 U.S. Dist. LEXIS 41451, at *3-4 (N.D. Cal. Mar. 10, 2020) (internal quotation marks omitted).

In the instant case, Astral asked the Court for permission to serve the summons and complaint on Care20 by email. This included an email address that Care20 had provided when it issued its counternotice to Google, as well as other email addresses that Astral found for other mobile applications that appeared to be affiliated with Care20. The Court granted the motion in part. The Court allowed for email service but also required service on the physical address in Pakistan that Care20 had provided in its counternotice to Google. *See* Docket No. 13 (Order at 4). Subsequently, Astral filed a proof of service confirming delivery on the email addresses and at the physical address in Pakistan. *See* Docket No. 14 (Silver Decl.). Astral later filed a proof of service confirming that it had served a copy of the operative first amended complaint ("FAC") via the email addresses and the physical address. *See* Docket No. 16 (Silver Decl.).

In light of the above, service of process was sufficient, and the Court moves on to the

substance of Astral's motion for default judgment.[4]

B.     Personal Jurisdiction

Astral's motion for default judgment recognizes that personal jurisdiction is a potential concern given that Care20 appears to be based in Pakistan. *See Bungie, Inc. v. Thorpe*, No. 21-cv-05677-EMC, 2023 U.S. Dist. LEXIS 28666, at *8 (N.D. Cal. Feb. 21, 2023) (stating that a court may deny a motion for default judgment for lack of personal jurisdiction because a judgment entered without personal jurisdiction is void; adding that, where proof is limited to written materials rather than an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction). Astral does not contend that there is general jurisdiction over Care20; rather, it argues that there is specific jurisdiction. *See* Mot. at 3 (stating that "only specific jurisdiction is at issue here").

The Ninth Circuit has stated that, "[w]hen a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for 'each claim asserted against a defendant.' If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative facts' as the claim for which jurisdiction exists." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *see also AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 n.4 (9th Cir. 2020) ("If the exercise of jurisdiction over these claims were proper, we may assert 'pendent personal jurisdiction' over [plaintiff's] additional claim for unfair competition because it arises out of a common nucleus of operative fact.").

In the instant case, Astral has asserted claims for (1) trademark infringement in violation of the Lanham Act, *see* 15 U.S.C. § 1114(1); (2) unfair competition in violation of the Lanham Act, *see id.* § 1125; (3) unfair competition in violation of California Business & Professions Code §

---

[4] Although service of the complaints on the physical address seems to have been successful, it appears that Care20 stopped using that physical address at some point. For example, when Astral tried to serve a copy of the Court's order on supplemental briefing on Care20, Astral was told that Care20 "had moved from the last known address and the package was undeliverable." Docket No. 28 (Silver Decl. ¶ 3).

There is no indication that service on any email address has been a problem.

17200; and (4) copyright infringement in violation of the Copyright Act. *See* 17 U.S.C. § 501. These claims are all based on a common nucleus of operative fact – *i.e.*, Care20's use of two icons for its two period-tracking mobile applications. Therefore, if Astral can show personal jurisdiction for one of its causes of action, then the Court may exercise pendent personal jurisdiction over the other causes of action.

In its papers, Astral argues that the Court has personal jurisdiction over the copyright infringement claim. As indicated above, the DMCA has provisions on takedown notices and counternotices. Title 17 U.S.C. § 512(g)(3) governs the contents of a counternotice. It provides that a counternotice must include, *inter alia*,

> a statement that the subscriber [*i.e.*, the alleged infringer] consents to the jurisdiction of Federal District Court for the judicial district in which the [subscriber's] address is located, or if the subscriber's address is outside of the United States, for any judicial district in which the service provider may be found, and that the subscriber will accept service of process from the person who provided notification under subsection (c)(1)(C) [*i.e.*, the party claiming infringement] or an agent of such person.

17 U.S.C. § 512(g)(3)(D) (emphasis added).

As indicated above Care20's counternotice included the required statement:

> I consent to the jurisdiction of Federal District Court for the judicial district in which I reside (or the Northern District of California if my address is outside of the United States), and I will accept service of process from the person who provided notification under subsection (c)(1)(C) or an agent of such person."

Docket No. 28 (Silver Decl., Ex. 1) (email from Google to Astral, providing information about counternotice from Care20).

In its order on supplemental briefing, the Court asked whether the consent to jurisdiction would be with respect to a dispute between the subscriber and the service provider, and/or a dispute between the subscriber and the party claiming infringement. Astral argues that consent would extend to a dispute between the subscriber and the party claiming infringement because the takedown notice/counternotice process ultimately involves a dispute between the subscriber and the party claiming infringement. Astral also asserts that this interpretation would be consistent with the language in the statute that the subscriber is willing to accept service of process from the

8

party claiming infringement.  Finally, Astral cites to authorities that have adopted this approach.  For example, in *Epic Games, Inc. v. Mendes*, No. 17-cv-06223-LB, 2018 U.S. Dist. LEXIS 98719 (N.D. Cal. June 12, 2018), the plaintiff sued several individuals for software cheats that allowed players to modify Fortnite to give themselves advantages over other players.  The plaintiff sought a default judgment against one of the individuals, Mr. Rak.  Judge Beeler concluded that

> [t]he court has personal jurisdiction over Mr. Rak because [following the plaintiff's takedown notice to YouTube] he submitted a DMCA counter-notification in which he expressly stated that he "consent[s] to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located[.]"  Mr. Rak's address on his DMCA counter-notification was outside of the United States.  YouTube is located in the Northern District of California.  Mr. Rak thus has consented to personal jurisdiction here [*i.e.*, for his dispute with the plaintiff].  *See, e.g.*, *Tecnologias Avanzadas RD, SRL v. Riegler*, No. 16-cv-06701-EDL, 2017 U.S. Dist. LEXIS 98593, 2017 WL 2772301, at *2 (N.D. Cal. June 1, 2017) (holding that sending a DMCA counter-notification is an "affirmative act" by a defendant that constitutes consent to personal jurisdiction); *Crunchyroll, Inc. v. Pledge*, No. C 11-2334 SBA, 2014 U.S. Dist. LEXIS 47025, 2014 WL 1347492, at *9 (N.D. Cal. Mar. 31, 2014) (same).

*Id.* at *11-12.

In light of the above, Astral has made a sufficient showing of personal jurisdiction over the copyright infringement claim.  The language of the consent provision is broad enough to apply to the instant case.  Moreover, there is pendant personal jurisdiction over the remaining claims.

C.  *Eitel* Factors

Because Astral has sufficiently established personal jurisdiction, the Court now turns to whether a default judgment is warranted on the merits.  Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment when the clerk has already entered a party's default.  Fed. R. Civ. P. 55(a)-(b).

> Upon default, "all well-pleaded allegations regarding liability are taken as true, except with respect to damages." *DiscoverOrg Data, LLC v. Bitnine Global, Inc.*, No. 19-CV-08098-LHK, 2020 U.S. Dist. LEXIS 210494, 2020 WL 6562333, at *2 (N.D. Cal. Nov. 9, 2020).  However, a court still may conduct hearings or make referrals where needed to "establish the truth of any allegation by evidence, or investigate any other matter." Fed. R. Civ. P. 55(b)(2).

*Bungie*, 2023 U.S. Dist. LEXIS 28666, at *7-8.

1  "The district court's decision whether to enter a default judgment is a discretionary one."

2  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court may consider the following

3  factors in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim[s], (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Many of the above factors weigh in favor of a default judgment.  For example, as to the first factor, if the motion for default judgment were to be denied, then Astral would likely be prejudiced as it would be left without a remedy.  *See Walters v. Shaw/Guehnemann Corp.*, No. 03-cv-04058, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy.  Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

As for the fourth *Eitel* factor, Astral is not asking for money damages; it seeks only injunctive relief.

As to the fifth, sixth, and seventh *Eitel* factors, because Care20 has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts.  Nor is there any indication that Care20's default was due to excusable neglect. And while public policy favors decisions on the merits, *see Eitel*, 782 F.2d at 1472, Care20's choice not to defend this action renders a decision on the merits "impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

The only remaining factors that warrant additional analysis are the second and third *Eitel* factors – *i.e.*, the merits of the Astral's substantive claims and the sufficiency of those claims.  For purposes of the pending motion, the Court addresses the trademark infringement claim alone. This is because, if Astral prevails on the trademark infringement claim alone, that is a sufficient

10

1 basis for the injunctive relief it seeks.

2     "To prevail on [a] Lanham Act trademark claim, a plaintiff must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (internal quotation marks omitted). On element (1), Astral has alleged that it is the current owner of the trademark. *See* FAC ¶ 33. There is nothing in the record to suggest otherwise. *See id.* 1203 ( "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services. Therefore, a party pursuing a trademark claim must meet a threshold use in commerce requirement.") (internal quotation marks omitted). Astral has also alleged that the trademark has been registered with the USPTO. *See* FAC ¶ 33. "'[F]ederal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). ("'[F]ederal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark."). Again, there is nothing in the record to suggest otherwise. Therefore, the first element of trademark infringement has been satisfied.

    As to the second element, there is little doubt that the first icon Care20 used for its period-tracking mobile application is likely to cause consumer confusion. *See Network Auto., Inc. v. Adv. Sys. Concepts*, 638 F.3d 1137, 1145 (9th Cir. 2011) (reciting the *Sleekcraft* factors which help assess "whether consumers would likely be confused by related goods: '[1] strength of the mark; [2] proximity of the goods; [3] similarity of the marks; [4] evidence of actual confusion; [5] marketing channels used; [6] type of goods and the degree of care likely to be exercised by the purchaser; [7] defendant's intent in selecting the mark; and [8] likelihood of expansion of the product lines'"). The design of the icon is a very close match (if not an identical one) to the design of the trademark. *See* Supp. Br. at 10 (showing images). Care20 is using the icon for the same product/service being offered by Astral – *i.e.*, a period-tracking mobile application. Both Care20 and Astral offer their period-tracking mobile applications on the same platform: Google

Play.[5]

It is a closer call as to whether the second icon used by Care20 is likely to cause consumer confusion. *See* Supp. Br. at 10 (showing images). The trademark has a flower with six "fat" petals; Care20's second icon has a flower with seven "skinny" petals. The trademark's flower has a center that has some details ("flecks") and the petals are shaded; Care20's second icon has a center with no details and the petals have no shading at all. On the other hand, the flowers are still similar, and, notably, Care20 has used an almost identical color scheme – *i.e.*, a pink background and a white flower with a yellow center. (As noted above, Astral's trademark is not color specific; however, its period-tracking mobile application uses a specific color scheme.) Astral also fairly points out that, even if Care20 wanted to use flower imagery (*i.e.*, because flower imagery is often used with reproductive-related products/services), Care20 could have distinguished its icon from Astral's by, *e.g.*, including a bee or butterfly. It could have also used a different color scheme. Care20 did not. The Court, therefore, is persuaded that, even though a closer call, the second icon Care20 used for its period-tracking mobile application is still likely to cause consumer confusion and thus Astral has stated a valid claim of trademark infringement. In view of this finding, the Court need not address the viability of Astral's other legal claims.

D.  Relief

For the foregoing reasons, the Court grants Astral's motion for default judgment. However, it modifies Astral's proposed order slightly.

- The first paragraph is modified to read: "Defendant; its officers, agents, servants, employees, and attorneys; and other persons in active concert or participation with anyone described above be permanently enjoined and restrained from."
- The third paragraph is eliminated in its entirety; it is not necessary in light of the first paragraph.
- A sentence shall be added as the last line of the order, reading: "This order binds

---

[5] Given the above, the Court need not worry too much about the strength of Astral's trademark. According to Astral, it has a strong mark because, as of July 2023, its period-tracking mobile application has had over 10 million downloads, nearly 400,000 reviews, and a 4.8-star rating. *See* FAC ¶ 15.

12

only those identified above who receive actual notice of it by personal service or otherwise." *See* Fed. R. Civ. P. 65(d)(2).

Astral shall promptly file a modified proposed order in accordance with the above, after which the Court shall sign it. The Court shall also at that time enter a final judgment in Astral's favor.

This order disposes of Docket No. 22.

**IT IS SO ORDERED**.

Dated: February 16, 2024

_____
EDWARD M. CHEN
United States District Judge

13